

FILED
JAN 0 5 2015

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| PAUL ARCHAMBAULT, Individually and as Administrator of the Estate of HARRIET ARCHAMBAULT,<br><br>Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>Defendants. | 1:12-CV-01022-CBK<br><br>ORDER |

## INTRODUCTION

Plaintiff Paul Archambault filed his complaint on August 23, 2012 against the defendant, the United States of America, alleging that the Department of Health and Human Services (HHS) and the Indian Health Services (IHS) were negligent by failing to reasonably screen, hire, investigate, train and/or supervise medical employees, and as a result of such negligence the plaintiff's wife, Harriet Archambault, died from medical malpractice. Plaintiff brought suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, and jurisdiction was vested pursuant to 28 U.S.C. § 1346(b).

Defendant filed a motion for summary judgment, claiming that this Court is without subject matter jurisdiction based upon a failure of the plaintiff to provide proof of his appointment as the executor of Harriet Archambault's estate to HHS during the administrative claims process. Additionally, the defendant claims that the discretionary

function exception of the Federal Tort Claims Act bars recovery and that the care Harriet received was reasonable.

## FACTS

The summary judgment standard is well known and has been set forth by this Court in numerous opinions. See Hanson v. North Star Mutual Insurance Co., 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Tripp County, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), Smith v. Horton Industries, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary Judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment. . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to the plaintiff and

give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-898. The following is based upon the record.

Paul and Harriet Archambault lived in Bullhead, South Dakota, on the Standing Rock Sioux Indian Reservation. Harriet died on November 27, 2007, at the age of forty-one. Prior to her death, Harriet received the majority of her medical care from the McLaughlin Indian Health Services Health Center, which is operated by the United States Health and Human Services. In October, 2009, Paul Archambault filed an administrative claim with HHS seeking damages for wrongful death under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680. On November 5, 2009, HHS acknowledged it received the claim and requested "evidence of the appointment of the administrator or the executor of the estate." Initially, HHS received evidence regarding plaintiff's appointment as the administrator in the form of an order from the Standing Rock Sioux Tribal Court titled "Interim Letters of Administration." That order limited the appointment to obtaining medical records relating to the care and treatment of Harriet.

At this point, the parties differ as to whether plaintiff filed a subsequent letter stating that Paul Archambault was appointed as executor of the entire estate. The United States is at least aware of this letter as they filed it as Exhibit # 7, Doc. 34. The United States alleges that it did not receive the letter until after the present lawsuit was started, which the plaintiff denies. The plaintiff claims that former counsel sent the document to IHS on April 9, 2010, and never heard from the government regarding a lack of proof that the plaintiff was named the executor.

3

Ultimately, the administrative claim was denied on August 27, 2010. The denial was based on the claim that "the evidence fails to show that an employee of the federal government acting within the scope of employment was negligent." The present action was timely filed on August 23, 2012.

## DECISION

The United States is immune from suit absent an express waiver of its sovereign immunity. The Federal Tort Claims Act (FTCA) provides a limited waiver of that sovereign immunity to allow persons injured by federal employee tortfeasors to sue the United States for damages in federal district court. 28 U.S.C. § 1346(b)(1). The United States contends that this court lacks subject matter jurisdiction because of the plaintiff's failure to provide proof of executor appointment, as well as that the hiring decisions fall within the discretionary function exception to the FTCA. The discretionary function exception, 28 U.S.C. § 2680(a), holds that:

> The provisions of this chapter and § 1346(b) of this title shall not apply to: Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or a regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

If an alleged act falls within the discretionary function exception, a court is without subject matter jurisdiction. Dykstra v. United States Bureau of Prisons, 140 F.3d 791 (8th Cir. 1998).

## I. Subject Matter Jurisdiction

The first issue is whether the government is entitled to summary judgment based on a lack of subject matter jurisdiction because the plaintiff failed to properly show that he was the executor of the estate. One of the requirements of the FTCA is evidence that the plaintiff is authorized to act on behalf of the claimant. Mader v. United States, 654 F.3d 794 (8th Cir. 2011). A claim that fails to satisfy that requirement remains inchoate and therefore not judicially actionable. Mader at 807. In this case, however, there is at least enough evidence to survive a motion for summary judgment, as the plaintiff's former counsel submitted an affidavit stating that the plaintiff did properly submit the documentation showing that he was appointed the executor of the estate. Under Federal Rules of Civil Procedure 56(c), a motion for summary judgment is granted only if there is no genuine issue of a material fact. Whether the plaintiff properly submitted the documentation when he claimed he did is a material fact, and it would therefore be improper to grant summary judgment on this issue.

## II. Discretionary Function

In analyzing whether an alleged act or omission falls within the discretionary function exception, the United States Supreme Court has provided two guiding principles to assist the District Courts. Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958 (1988). First, the alleged action must be a matter of choice for the acting employee. Id. "[I[f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary

function exception to protect." *Id.* at 536, 108 S.Ct. at 1959. Therefore, in order for the discretionary function exception to apply, the government must have made a choice.

The second guiding principle requires a court to determine whether the choice is of the kind that the discretionary exception was designed to shield. *Id.* This inquiry reflects the policy of Congress "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Varig Airlines, 467 U.S. 797, 814, 104 S. Ct. 2755, 2765 (1984). When engaging in this second inquiry, a court is to determine whether the judgment is grounded in social, economic, or political policy, and, if the choice is based on such policy considerations, then the discretionary exception will bar the claim. Dykstra, 140 F.3d at 795. Therefore, the discretionary exception only insulates the federal government from liability in cases where the government makes a decision based upon considerations of public policy. Berkovitz, 486 U.S. at 537, 108 S. Ct. at 1959.

In United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 1274-1275 (1991), the Supreme Court reiterated its conclusion that the discretionary function exception only applies when a decision has been made that is the result of public policy considerations. Dykstra, 140 F.3d at 795. At a very minimum, therefore, the government must actually make a decision, a decision that comes after taking into account some aspect of public policy. If no decision was made, or the decision was not predicated upon public policy, then the discretionary function exception does not apply. *See* Gaubert, 499 U.S. at 322,

6

111 S.Ct. at 1273; Berkovitz, 486 U.S. at 536-537, 108 S.Ct. at 1958-1959; Varig Airlines, 467 U.S. at 811, 104 S.Ct. at 2763; Dykstra, 140 F.3d at 795.

The discretionary function exception is applicable to this case. Part of the plaintiff's case rests on the staffing and the manner in which the McLaughlin Health Clinic operates. Varig Airlines makes it clear that courts are not to "second-guess" administrative policies that are grounded in economic, social, or political policies. Varig Airlines, 467 U.S. at 2757. The staffing and operating procedures of an IHS health clinic fall under that category of administrative policies. There are finite resources available to HIS. Decisions as to staffing and operating procedures need to be made in an effort to maximize the effectiveness of the agency.

Plaintiff contends that there is a Congressional mandate to provide health care to Native Americans. The United States clearly agrees that there is a broad mandate to do so. Implementation of that mandate, however, is left to the discretion of the agencies charged with delivering the health care. The Supreme Court in Gaubert summarized this concept as follows:

> [I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

7

Gaubert, 499 U.S. at 324, 111 S.Ct. at 1274 (internal citations omitted). The cases and mandates cited by the plaintiff do not mandate any particular conduct as to the manner in which health care is delivered to Native Americans. Therefore, it is left to the clinics to best determine how to use the resources effectively.

The plaintiff has not shown that the McLaughlin Health Clinic's operations fall outside the discretionary function. There was no specific mandate on how the clinic was supposed to operate, in what order patients were to be seen, or that everyone who presented themselves to clinic had to be seen on the same day. Rather, those decisions were left to the people operating the clinics, and were therefore discretionary in nature.

Plaintiff, in the briefs, has lodged many complaints against the Indian Health Service ("IHS") and the failures of the United States to live up to treaty obligations. The court sympathizes with the plaintiff. The problems within HIS are well known, at least to those of us with significant contacts with "Indian Country." I have often observed that Native Americans have been and are being unfairly treated by the United States, considering the failed promises these many years. This court, however, cannot micro-manage the HIS or even a single clinic. I cannot dictate how many hours per day or week or month any federal health care provider should be required to be on duty. The court also realizes how very difficult it is for any health care agency to recruit and retain qualified health care providers, especially in rural isolated areas. Living conditions are often sub-standard, especially for highly educated workers. The climate is rather harsh. The ultimate solution is for Native Americans to obtain the necessary education and skills to return to serve their families and others. That process has already started and

8

improvements have been made by dedicated health care providers. Much more remains to be accomplished.

### III. Standard of Care

Harriet Archambault died of sudden heart arrhythmia. Plaintiff contends that prior to her death Harriet was experiencing new symptoms such as shortness of breath, chest pains, and dizziness. She was seen by health care providers at the McLaughlin Health Clinic in connection with treating heartburn, acne, and hypertension.

Harriet had a variety of prescriptions, which included hypertension medication, antibiotics, fluid retention medication, and ulcer medication. She had a history of either failing to take the medications or letting the prescriptions run out, and then wait for some time, up to several months, to refill them. She refilled her hypertension medication in March of 2007, but failed to refill her prescription until October 2007. She went without her medication during July, August, and September. When she died, she still had several hypertension pills remaining. Plaintiff contends in part that she was unable to refill her prescription because she was never seen by anyone at the clinic. However, there are signs directing how to refill prescriptions, and a patient does not have to see a medical provider to refill her prescriptions. She needed to either call or appear at the pharmacy with the refill slip, and did not have to obtain an appointment at the clinic.

On October 25, 2007, Harriet went in to the health clinic for a visit. The record shows that the visit was routine. Harriet denied having any shortness of breath when asked. She was then advised to continue to take her medications. When she did take the medications, they appeared to control her blood pressure. Her medications were not

9

changed. Plaintiff contends that Harriet tried returning to the health clinic after that with the new symptoms. There are signs in the clinic that direct patients that, if they are suffering shortness of breath, chest pains, or dizziness, to let the nurse at the registration window know and they will be seen. Harriet did not inform anyone that she was suffering from those symptoms and was subsequently not seen when there were no providers available.

Had she been seen after complaining about those symptoms, both the plaintiff's and defendant's expert witnesses agree that there would have been little to no change in her treatment regimen. She would have been told to continue taking her medication and would have been scheduled for a reevaluation. During her last visit, the nurse practitioner told her to return in either three months or as needed.

In malpractice claims, the relevant inquiry is whether the clinic employees provided reasonable care and exercised professional judgment under the circumstances. Koeniguer v. Eckrich, 422 N.W.2d, 600, 602 (S.D. 1988). The record shows that Harriet had a history of noncompliance with taking her medication. When she did, her ailments were controlled. She never told anyone at the clinic that she was suffering from shortness of breath or chest pains. Had she done so, she would have been seen.

There is not sufficient evidence for a reasonable fact finder to find that the employees at the McLaughlin Health Clinic violated the standard of care to allow recovery under the Federal Tort Claims Act. Obviously, in ruling on a motion for summary judgment, the court should not and cannot decide genuine issues of material

facts. I want to make it clear that the "heart" of this opinion and the ultimate dismissal is founded on the discretionary function exception.

## ORDER

Based upon the foregoing,

IT IS ORDERED that defendant's motion for summary judgment, Doc.31, is granted. This case is dismissed with prejudice and without costs.

DATED this 5th day of January, 2015.

BY THE COURT:

*[signature]*

CHARLES B. KORNMANN
United States District Judge